**Stacy GELVIN, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PENNSYLVANIA STATE POLICE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 13, 2015.
Decided July 13, 2015.

---

**6.** (Trial Court op. at 7.).

Edith A. Pearce, Philadelphia, for petitioner.

James A. Mazzotta and Stephanie S. Ringbloom, Pittsburgh, for respondent.

BEFORE: BERNARD L. McGINLEY, Judge, and P. KEVIN BROBSON, Judge, and PATRICIA A. McCULLOUGH, Judge.

OPINION BY Judge PATRICIA A. McCULLOUGH.

Stacy Gelvin (Claimant) appeals from the August 4, 2014 order of the Workers' Compensation Appeal Board (Board) reversing the order of a workers' compensation judge (WCJ) that granted Claimant's reinstatement and penalty petitions and awarded Claimant unreasonable contest counsel fees and litigation costs.

## I. Facts/Procedural History

In 2008, a WCJ awarded Claimant, a former state trooper for the Pennsylvania State Police (Employer), benefits for disability resulting from work-related post-traumatic stress disorder as of December 21, 2006. A few weeks before the WCJ's decision was circulated, Employer accepted the injury by filing a notice of compensation payable. On June 25, 2012, Claimant filed reinstatement and penalty petitions, alleging that Employer unilaterally stopped Claimant's indemnity benefits and improperly took an offset based on Claimant's receipt of a disability pension. (WCJ's Findings of Fact Nos. 1–3.) The petitions were consolidated and assigned to a WCJ.

Claimant testified by way of deposition on October 8, 2012, stating that she applied for disability pension benefits with the Pennsylvania State Employees' Retirement System (SERS) in February 2011 and began receiving those benefits on February 29, 2012. (Reproduced Record (R.R.) at 55a.) Claimant stated that her disability pension was retroactive to February 2011, the date on which she applied, and that she received a lump sum payment to reflect this amount.[1] (R.R. at 65a–66a.) Claimant testified that, on March 16, 2012, she reported the disability pension benefits on an Employee Report of Benefits Form

---

1. Claimant did not recall the exact date she received the lump sum payment. (R.R. at 65a.).

(LIBC–756 form) sent by Employer in March 2012.[2] (R.R. at 56a.) Claimant noted that she previously signed LIBC–756 forms on December 14, 2010, and December 21, 2011, indicating that she had no other benefits to report. (R.R. at 61a–63a.)

Claimant testified that she received a Notice of Workers' Compensation Benefit Offset from Employer on March 27, 2012, informing her that her workers' compensation benefits would be suspended starting on April 21, 2012, and would be restored on March 5, 2013. (R.R. at 57a–58a.) Claimant testified that she suffered a hardship when Employer suspended benefits because she went nearly a year without receiving any compensation and exhausted all of her financial resources in order to pay her bills. (R.R. at 59a–60a, 67a–68a.)

Employer presented the deposition testimony of Richard Bimeal (Bimeal), a claims adjuster for CompServices. Bimeal testified that after he received Claimant's LIBC–756 form, he sent Claimant a notice of offset form on March 27, 2012, which claimed an overpayment and recoupment of $19,597.99 against Claimant's workers' compensation benefits and suspended her benefits effective April 21, 2012. (R.R. at 123a–25a.) Bimeal acknowledged that there was no WCJ's order or agreement between the parties allowing recoupment against Claimant's workers' compensation benefits. (R.R. at 129a.)

In his decision and order dated January 17, 2013, citing *Maxim Crane Works v. Workers' Compensation Appeal Board*

(*Solano*), 931 A.2d 816 (Pa.Cmwlth.2007), the WCJ found that Employer was only entitled to a retroactive credit as of March 16, 2012, when Claimant returned the LIBC–756 form sent to her after her receipt of the disability pension. Thus, the WCJ granted Claimant's reinstatement petition as of April 21, 2012, at a reduced rate to reflect Claimant's receipt of disability pension benefits. Relying on *Muir v. Workers' Compensation Appeal Board (Visteon Systems LLC )*, 5 A.3d 847 (Pa. Cmwlth.2010), the WCJ also found that the manner in which Employer notified Claimant of her reporting requirements and unilaterally recouped the pension benefit offset violated the Act and Bureau[3] regulations. Consequently, the WCJ imposed on Employer a penalty of 50% of Claimant's benefits payable during the time that Employer suspended Claimant's benefits. The WCJ also determined that Employer "offered no viable evidence to justify its unilateral stoppage of benefits," (R.R. at 9a), and awarded Claimant an unreasonable contest counsel fee.

Employer appealed to the Board. By opinion and order dated August 4, 2014, the Board found that no statutory provision or regulation requires an employer to file a suspension petition in order to recoup workers' compensation benefits paid to a claimant. The Board distinguished *Maxim Crane* from the present case, stating that, contrary to Employer's actions in this case, the employer in *Maxim Crane* failed to act with due diligence in notifying the claimant of his duty to report the receipt of his Social Security benefits.

**2.** A claimant must accurately complete any verification form sent by an insurer within thirty days of its receipt, and an insurer may suspend benefits until receipt of the verification form if the claimant fails to timely respond. An insurer may require a claimant to complete a verification form no sooner than

every six months. Section 311.1 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 631.1.

**3.** Pennsylvania Department of Labor and Industry, Bureau of Workers' Compensation.

The Board stated that *Muir* only stood for the proposition that employers must provide claimants with a new LIBC–756 form every six months, and it does not hold that employers are not allowed an offset of a retroactive award. The Board also observed that Employer made Claimant aware of her reporting obligation and provided her with an LIBC–756 form on a regular basis.

The Board reasoned as follows:

> The WCJ determined that [Employer] is only entitled to an offset from Claimant's SERS benefits as of the date it provided Claimant with the most recent LIBC–756 [form]. If we were to agree with that thinking, it would lead to the absurd result that an employer would be entitled to an offset from unemployment, old age Social Security, or pension benefits *only if* it sent [an] LIBC–756 [form], which was received by the employee on the very day that employee received a retroactive payment. We do not believe that is what the Act, its Regulations, or case law states. To the extent that Claimant alleges a prejudice, we would note that Claimant was receiving full workers' compensation benefits during the entire time that she was waiting for the approval of her pension benefits, and to affirm the WCJ would allow a double recovery.

(Board's op. at 10–11.) Thus, the Board determined that Employer was entitled to recoupment from Claimant's retroactive payment of disability pension benefits and that Employer did not violate the Act or unreasonably contest Claimant's petitions. Accordingly, the Board reversed the WCJ's order.

On appeal to this Court,[4] Claimant argues that the Board erred in reversing the WCJ's decision, particularly where the WCJ found that Claimant would suffer financial hardship.

## II.  Discussion

■  Under section 204(a) of the Act, 77 P.S. § 71(a), an employer is entitled to an offset for any type of pension benefits to the extent it funded those benefits. *City of Philadelphia v. Workers' Compensation Appeal Board (Grevy )*, 968 A.2d 830, 838 (Pa.Cmwlth.2009). The regulation at 34 Pa.Code § 123.5(b) provides the manner in which recoupment of an offset is calculated:

> (b) The net amount received by the employee shall be calculated consistent with §§ 123.6–123.11. The amount received by the employee shall be divided by the weekly workers' compensation rate. The result shall be the number of weeks, and fraction thereof, the insurer is entitled to offset against future payments of workers' compensation benefits.

34 Pa.Code § 123.5(b).

Employees are required to report to the insurer amounts received in unemployment compensation, Social Security (old age), severance, and pension benefits on an LIBC–756 form, "Employee's Report of Benefits." 34 Pa.Code § 123.3(a). Insurers are required to notify employees of the Act's reporting requirements and must provide an employee with the forms required to fulfill the employee's reporting and verification obligations. 34 Pa.Code § 123.501. A claimant must complete an LIBC–756 form and forward it to the insurer "within 30 days of [her] receipt of any of the benefits specified in subsection (a) or within 30 days of any change in the

---

4.  Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

receipt of the benefits specified in subsection (a), but at least every 6 months." 34 Pa.Code § 123.3(b).

The regulation at 34 Pa.Code § 123.4 sets forth the following scheme:

(a) After receipt of Form LIBC–756, the insurer may offset workers' compensation benefits by amounts received by the employee from any of the sources in § 123.3 (relating to employee report of benefits subject to offset). The offset of workers' compensation benefits only applies with respect to amounts of unemployment compensation, Social Security (old age), severance and pension benefits received subsequent to the work-related injury.

\* \* \*

(a) At least 20 days prior to taking the offset, the insurer shall notify the employee, on Form LIBC–761, "Notice of Workers' Compensation Benefit Offset," that the workers' compensation benefits will be offset. The notice shall indicate:

(1) The amount of the offset.

(2) The type of offset (that is—unemployment compensation, Social Security (old age), severance or pension).

(3) How the offset was calculated, with supporting documentation, which may include information provided by the employee.

(4) When the offset commences.

(5) The amount of any recoupment, if applicable.

34 Pa.Code § 123.4(a), (b). A claimant may challenge the offset by filing a petition to review offset with the Department. 34 Pa.Code §§ 123.4(e), 123.5(d).

On appeal, Claimant's primary argument is that, in accordance with our decisions in *City of Pittsburgh v. Workers' Compensation Appeal Board (Wright)*, 90 A.3d 801 (Pa.Cmwlth.2014), *Muir*, and *Maxim Crane*, the WCJ was required to engage in a hardship analysis because the overpayment of benefits occurred for more than six months. We disagree.

The claimant in *Maxim Crane* sustained a work injury in 2000. He applied for old age Social Security benefits in January 2003 and subsequently, in April 2003, began receiving workers' compensation benefits pursuant to an agreement with his employer. On June 6, 2005, the employer sent the claimant an LIBC–756 form, which the claimant returned, confirming his receipt of old age Social Security benefits. The employer then sent the claimant a notice of workers' compensation benefit offset, informing the claimant that his weekly workers' compensation payments would be reduced to $0 for 25.75 weeks in order for the employer to recoup fourteen months of Social Security benefits.

The claimant filed a petition to review benefit offset. A WCJ granted the petition, concluding that the employer was not entitled to recoup fourteen months of overpayment but, rather, was only entitled to an offset as of June 6, 2005, the date that the employer sent the claimant the LIBC–756 form. The Board affirmed the WCJ's decision. On further appeal in *Maxim Crane*, this Court also affirmed, holding that, while claimants·have a duty to report any benefits received, employers have the initial duty to notify claimants of the reporting requirement. We stated that, because the employer in *Maxim Crane* failed to act with due diligence, "hardship and prejudice to [the claimant] can be presumed as [the claimant's] weekly workers' compensation benefits would be reduced to zero for a period of 25.75 weeks." *Id.* at 820. We further concluded that, because the employer waited two years after the claimant began receiving workers' compensation benefits to notify him of his reporting obligation, the doctrine of laches barred the employer from recouping Social

Security benefits prior to June 6, 2005, the date the claimant first received the LIBC–756 form.

In *Muir*, the claimant completed an LIBC–756 form provided by the employer on August 8, 2005, reporting that she received Social Security disability benefits. On June 26, 2007, the employer sent the claimant another LIBC–756 form, and the claimant noted that she began receiving old age Social Security benefits on October 28, 2006. Subsequently, the employer filed a notice of workers' compensation benefit offset, asserting a credit for the claimant's old age Social Security benefits and advising the claimant that it would suspend her workers' compensation benefits beginning on August 28, 2007.

The claimant filed a penalty petition, alleging that the employer's suspension of benefits violated the Act. A WCJ found that, in contrast to the facts in *Maxim Crane*, the employer in *Muir* had met its initial duty of notifying the claimant of her duty to report any new benefits received on a new LIBC–756 form and, consequently, denied the penalty petition. The claimant appealed to the Board, which concluded that our holding in *Maxim Crane* controlled and reversed the WCJ's decision. Interpreting the regulation at 34 Pa.Code § 123.3(b), the Board held in *Muir* that employers have an obligation to supply claimants with LIBC–756 forms every six months. The Board determined that, because the employer failed to provide the claimant with a new LIBC–756 form every six months, the employer was not entitled to the offset of the claimant's old age Social Security benefits. The Board reasoned that:

> Otherwise, [claimants] could be subjected to rather large retrospective offsets if several years have past [sic] since they last received an LIBC–756 form from the employer. Indeed, it might be unrealistic to expect unsophisticated [claimants] to file LIBC–756 forms entirely on their own volition at least every six months, which is why the regulations place a duty on the insurer to provide them with the forms.

*Muir*, 5 A.3d at 850 (citation and quotations omitted). On further appeal to this Court, we agreed with the Board's determination and adopted its reasoning.

■ Contrary to Claimant's assertions, the record in this case reflects that Employer satisfied its duty under *Maxim Crane* and *Muir* to notify Claimant of her reporting requirements by way of an LIBC–756 form. Employer sent Claimant an LIBC–756 form on December 21, 2011; Claimant received disability pension benefits on February 29, 2012; and Employer sent Claimant another LIBC–756 form in March 2012.

We recognize that the purpose of our holding in *Muir*, that employers must remind employees of their duty to report benefits every six months, is to avoid circumstances where an employer's lack of diligence results in the employee being subjected to a large retrospective offset. *Muir*, 5 A.3d at 850. In this case, Employer notified Claimant of her duty to report her pension disability benefits by sending an LIBC–756 form approximately sixty days before and again less than thirty days after she began receiving her disability pension. Accordingly, although Claimant was subjected to a large retrospective offset, the amount Employer recouped was not related to any lack of diligence on Employer's part.

Claimant argues that the Board erred in allowing Employer's recoupment because the WCJ found Claimant suffered a financial hardship. Claimant contends that, under *Wright*, a WCJ has authority to modify the terms of a recoupment in order to

reduce any financial hardship on a claimant and should have done so in this case.

The employer in *Wright* paid the claimant total disability benefits for approximately two months without an offset for the disability pension that the employer also paid the claimant. Subsequently, the employer issued a notice of workers' compensation benefit offset, informing the claimant that his workers' compensation benefits would be reduced in accordance with the employer-funded portion of the claimant's disability pension and that it would be further reducing the claimant's workers' compensation benefits by $100.00 from August 8, 2005, through January 8, 2006, in order to recoup its overpayment.

The claimant filed a petition to review, arguing, *inter alia*, that the employer was not entitled to an offset because it had not first sent the claimant an LIBC–756 form and alleging that the $100.00 deduction would constitute a financial hardship. The WCJ determined that the claimant had waived the first issue. The WCJ also credited the claimant's testimony that he suffered a financial hardship due to the recoupment, and concluded that the employer did not overcome the "presumption of prejudice" that occurs when an employer seeks to take an offset according to *Maxim Crane*. Thus, the WCJ granted the claimant's petition for offset review in part, disallowing the recoupment of the employer's overpayment.

Both parties appealed to the Board, which agreed that the claimant waived the issue of whether the employer had to issue an LIBC–756 form prior to taking an offset. The Board nevertheless held that the issuance of an LIBC–756 form is a condition precedent to recouping overpayment and affirmed the WCJ's decision.

On appeal to this Court, we agreed that the claimant waived the argument that the employer was precluded from recouping its overpayment because it failed to provide the claimant with an LIBC–756 form and held that the Board erred in setting aside the recoupment on that basis. Next, we explained that *Maxim Crane* had been decided on legal grounds, *i.e.*, that the employer had failed to notify the claimant of his duty to report offsetable benefits to the employer. We acknowledged that, in dicta, the court in *Maxim Crane* determined that there was a presumption of hardship based on the specific facts of that case, *i.e.*, the employer waited two years to inform the employee of his reporting obligation. Accordingly, we held that the WCJ erred in construing *Maxim Crane* as establishing a presumption of prejudice when recouping any overpayment of benefits.

In *Wright*, we also addressed our decision in *Muir* and stated as follows:

> *Muir*, advisedly, did not address the equities of recoupment but, rather, established that the employer must notify the claimant of his reporting requirement by sending him a Form LIBC–756 every six months. By doing so, *Muir* ensured that it will be a rare case where an employer will need to recoup an overpayment longer in duration than six months. Implicitly, *Muir* established that a recoupment of an overpayment that occurred over six months or less eliminates the need of the WCJ to inquire into hardship. This is not to say that a WCJ cannot structure a recoupment in a way that minimizes its impact on the claimant. . . . Such a structuring is consistent with the humanitarian purpose of the Act.

*Wright*, 90 A.3d at 812 (citation omitted).

We noted in *Wright* that the employer's recoupment period lasted only weeks and reduced the claimant's workers' compensation benefits by only $100 per week. We

also concluded that, to the extent that the recoupment caused financial hardship, the issue was moot because the claimant waited until after the recoupment had been completed to file his petition to review offset. Accordingly, we reversed the Board's decision to set aside the employer's recoupment.

Although Claimant relies on *Wright* to argue that a WCJ may modify a recoupment in order to minimize the financial impact on a claimant, Claimant has never requested a reduction in the recoupment amount in order to reduce her alleged financial hardship. Moreover, Claimant incorrectly states that the WCJ found financial hardship in this case. Contrary to Claimant's contention, the WCJ's Finding of Fact No. 17 merely summarized Claimant's testimony that she has experienced a "severe hardship," (WCJ's Finding of Fact No. 17), and such a summary does not constitute a finding. *Marcks v. Workmen's Compensation Appeal Board,* 65 Pa. Cmwlth. 107, 442 A.2d 9, 11 (1982) ("A synopsis or summarization of evidence is not fact-finding.").

Based on the foregoing, the Board properly determined that Employer is entitled to a retrospective offset beginning in February 2011.

**5.** Added by the Act of February 8, 1972, P.L. 25.

To the extent that Claimant seeks penalties based on Employer's suspension of benefits without first obtaining an executed agreement or order, the Board correctly held that the regulation at 34 Pa. Code § 123.4 allows an employer to take an offset unilaterally. *Costa v. Workers' Compensation Appeal Board (Carlisle Corporation),* 958 A.2d 596, 600–01 (Pa. Cmwlth.2008). Accordingly, the Board properly found that Employer did not violate the Act in doing so.

Finally, while section 440(a) of the Act[5] provides that a claimant who is successful in litigation is entitled to counsel fees when the employer has unreasonably contested the claimant's petition, Claimant has not prevailed in this litigation, and, thus, is not entitled to an award of counsel fees. 77 P.S. § 996(a).

Accordingly, we affirm.

### *ORDER*

AND NOW, this 13th day of July, 2015, the August 4, 2014 order of the Workers' Compensation Appeal Board is affirmed.