# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Gallese,                          :
              Petitioner     :
                             :
              v.                  :
                             :
The Pietrini Corporation (Workers'        :
Compensation Appeal Board),               :    No. 849 C.D. 2023
              Respondent    :    Submitted: September 9, 2024


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE COVEY                           FILED:  October 11, 2024


William Gallese (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) July 6, 2023 order affirming the WC Judge's (WCJ) decision, on remand, that granted The Pietrini Corporation's (Employer) petition to modify Claimant's WC benefits (Modification Petition). Claimant presents one issue for this Court's review: whether the Board erred by affirming a retrospective pension offset where Employer failed to seek recoupment in accordance with the reporting requirements set forth in Section 204 of the WC Act (Act)[1] and the offset regulations, and where the large retrospective offset is not in keeping with the equitable considerations raised in *Maxim Crane Works v.*

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 71 (which sets forth an offset for, *inter alia*, pension plan benefits).

*Workers' Compensation Appeal Board (Solano)*, 931 A.2d 816 (Pa. Cmwlth. 2007). After review, this Court affirms.

The following facts are undisputed by way of a Stipulation of Fact (Stipulation) that Claimant and Employer (collectively, the Parties) signed in February 2021, and the WCJ incorporated into her Findings of Fact. *See* Certified Record (C.R.) at 151-153; *see also* C.R. at 87 (WCJ Dec. at 4, Finding of Fact (FOF) No. 5).[2] Claimant sustained a work injury on October 24, 2016. He retired on August 1, 2019, and began receiving a monthly pension. On April 10, 2020, Employer filed the Modification Petition seeking an offset of Claimant's WC benefits as of April 10, 2020, for Claimant's receipt of Employer's funded pension. Due to the offset, Claimant's WC benefits were reduced to $450.83 per week, effective February 8, 2021. In the Stipulation, the Parties "agree[d] to leave open the issue involving Employer's right to take a credit from August 1, 2019 to February 8, 2021." C.R. at 152; *see also* C.R. at 87 (WCJ Dec. at 4, FOF No. 5).

On March 30, 2021, the WCJ granted the Modification Petition. The WCJ concluded that Employer was entitled to an offset by the net amount of Claimant's pension benefits. The WCJ reduced Claimant's benefits to $450.83 per week from August 1, 2019 to April 9, 2020, and ongoing from February 8, 2021. Employer appealed to the Board. On December 2, 2021, the Board remanded the matter to the WCJ. The Board determined that the WCJ failed to make sufficient findings related to the time period in which a pension credit was allowed. Specifically, while the WCJ awarded a pension credit from August 1, 2019 to April 9, 2020, and ongoing from February 8, 2021, she failed to make any findings on Employer's potential entitlement from April 10, 2020 to February 7, 2021. Thus, the Board remanded for the WCJ to make those specific findings.

---

[2] Because the pages of the certified record are not numbered, this Court references electronic pagination herein.

On August 26, 2022, the WCJ, again, granted Employer's Modification Petition. The WCJ determined that Employer was entitled to a pension offset credit for the entire period of August 1, 2019 through February 8, 2021, and ongoing. Claimant appealed to the Board. On July 6, 2023, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[3]

Initially, Section 204 of the Act provides, in relevant part:

(a) No agreement, composition, or release of damages made before the date of any injury shall be valid or shall bar a claim for damages resulting therefrom; and any such agreement is declared to be against the public policy of this Commonwealth. The receipt of benefits from any association, society, or fund shall not bar the recovery of damages by action at law, nor the recovery of compensation under article three hereof; and any release executed in consideration of such benefits shall be void: . . . Provided, however, . . . [t]he severance benefits paid by the employer directly liable for the payment of compensation and **the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award** made under [S]ections 108 and 306[(f.1) of the Act],[4, 5] except for benefits payable under [S]ection 306(c) [of the Act].[6] . . .
. . . .

[3] "[This Court's] review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated." *DiLaqua v. City of Phila. Fire Dep't (Workers' Comp. Appeal Bd.)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2021) (quoting *Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 595 n.6 (Pa. Cmwlth. 2019)).

[4] Section 108 of the Act (relating to occupational disease definition) was added by Section 1 of the Act of October 17, 1972, 77 P.S. § 27.1.

[5] 77 P.S. § 531.

[6] 77 P.S. § 513 (relating to the schedule of compensation for disability from permanent injuries of certain classes).

(c) The employe is required to report regularly to the insurer the receipt of . . . pension benefits, which post-date the compensable injury under th[e] [A]ct[.]

77 P.S. § 71 (emphasis added).

Section 123.501 of the Board's Regulations mandates:

> **An insurer shall notify the employe of the employe's reporting requirements** under [S]ections 204 and 311.1(a) and (d) of the [A]ct (77 P.S. §§ 71 and 631.1(a) and (d)).[7]  In addition, **the insurer shall provide the employe with the forms required** to fulfill the employe's reporting and verification requirements under [S]ection 311.1(d) of the [A]ct.

34 Pa. Code § 123.501 (emphasis added).

Claimant argues that the Board erred by affirming the WCJ's large, retroactive offset award under Section 204 of the Act where Employer failed to notify Claimant of his reporting requirements and overpaid Claimant for 18 months entirely due to Employer's lack of due diligence to notify Claimant of his reporting requirements at any point in time, since the inception of the claim.  Specifically, Claimant contends that Section 123.501 of the Board's Regulations clearly places the burden on the employer to "notify the employe of the employe's reporting requirements under Section 204" of the Act and to do so using the prescribed forms. 34 Pa. Code § 123.501.  Further, Claimant asserts that this Court has instructed that in order to establish a retroactive credit, an employer must implement recoupment in accordance with the Regulation, which includes issuing Form LIBC-756 to the employee every six months.  Claimant cites *Maxim* and *Muir v. Workers' Compensation Appeal Board (Visteon Systems LLC)*, 5 A.3d 847 (Pa. Cmwlth. 2010), to support his position.

---

[7] Section 311.1 of the Act was added by Section 6 of the Act of June 24, 1996, P.L. 350.

Employer rejoins that the Board did not err by affirming the retrospective pension offset in light of Claimant's testimony regarding his pension status, and lack of evidence of hardship/inequity. Employer cites *City of Pittsburgh v. Workers' Compensation Appeal Board (Wright)*, 90 A.3d 801 (Pa. Cmwlth. 2014), to support its position.

In *Maxim*, the employer argued that the Board erred by using the equitable doctrine of laches to affirm the WCJ's decision to disallow a retrospective offset for the claimant's receipt of old age Social Security (SS) benefits, and finding that the employer failed to exercise due diligence by failing to timely comply with Section 123.501 of the Board's Regulations. This Court disagreed, explaining:

> This Court has held that the doctrine of laches is available in administrative proceedings where no time limitation is applicable, where the complaining party failed to exercise due diligence in instituting an action and where there is prejudice to the other party. . . .
>
> [The e]mployer had an obligation to notify [the c]laimant of his reporting requirements under the Act in order to secure an offset. [The e]mployer, however, did not notify [the c]laimant of the reporting requirements until June 6, 2005 - nearly five years after his work injury, and over two years after [the c]laimant began receiving [WC] benefits. The Board determined that although [the e]mployer was entitled to pursue an offset from the time [the c]laimant began earning [WC] benefits, **by delaying to notify [the c]laimant of his duty to report his [SS] benefits until June 6, 2005, [the e]mployer failed to act with due diligence**. **If [the e]mployer [was] permitted to recoup the offsetable benefits prior to June 6, 2005, hardship and prejudice to [the c]laimant can be presumed as [the c]laimant's weekly [WC] benefits would be reduced to zero for a period of 25.75 weeks**. Based upon our review, the Board did not err or abuse its discretion in applying the doctrine of laches in this instance.

*Maxim*, 931 A.2d at 820 (emphasis added; citation and footnote omitted).

5

In *Muir*, similar to *Maxim*, this Court addressed a retrospective SS benefit offset, which would reduce the claimant's WC benefits to zero for a period of time. The *Muir* Court discussed *Maxim*:

> Unlike in *Maxim*, here, [the e]mployer provided [the c]laimant with a Form LIBC-756 in August 2005. [The c]laimant completed it and indicated that at the time she received [SS] disability benefits[,] which were not eligible for the offset. [The e]mployer did not provide [the c]laimant with another Form LIBC-756 until June 2007. [The c]laimant completed the form and indicated that she began receipt of old age [SS] benefits on October 28, 2006.
>
> The Board posited that there were two possible interpretations of the [Board's] [R]egulations which implemented Section 204(a) of the Act in light of *Maxim*: [(]1) the employer needed to supply a claimant with a Form LIBC-756 on one occasion[,] which then placed a duty on the claimant to duplicate the form or request a new one, whenever there was a change in the claimant's circumstances, or [(]2) the employer needed to supply the claimant with a new [Form] LIBC-756 every six months to remind and require her to update the reporting of benefits subject to offset. The Board adopted the second interpretation and reasoned that it would prevent a claimant from being subjected to large retrospective offsets if several years passed since he [or she] last received a form from an employer[,] and it would be unrealistic to expect unsophisticated claimants to file a new [Form] LIBC-756 on their own every six months. This Court finds no error of law in the Board's interpretation, especially in light of the humanitarian objectives of the Act.

*Muir*, 5 A.3d at 852-53.

Subsequently, in *Wright*, this Court was faced with a retrospective offset for pension benefits. Therein, the Board set aside the employer's recoupment of an overpayment of WC benefits where, for a period of approximately two months, the employer paid the claimant total disability WC without an offset for the disability

6

pension the employer also paid the claimant. The employer recouped the WC overpayment by reducing the claimant's weekly disability payment by $100.00 until it was repaid. The Board set aside the recoupment because the employer did not give the claimant the Form LIBC-756 for reporting his pension income before effectuating the recoupment. The WCJ held that the claimant waived the reporting form issue and that, in any case, the employer did not need to wait for the claimant to report his pension before effectuating an offset. The employer was fully aware of the pension it paid to the claimant. However, the WCJ set aside the recoupment for a different reason; namely, that the employer failed to prove that the recoupment did not prejudice the claimant. Concluding that both the Board and the WCJ erred, this Court reversed.

> The *Wright* Court determined:
>
> The Board agreed that [the c]laimant had waived the issue of the Form LIBC-756. However, the Board went on to hold that [the e]mployer's failure to provide [the c]laimant with a Form LIBC-756 barred its recoupment of the overpayment. This was error. If an issue is waived, it is waived for all purposes. Because we find the issue waived, **we need not address the WCJ's holding that [the e]mployer did not have to issue [the c]laimant a Form LIBC-756 before it [took] its offset because [the e]mployer did not need [the c]laimant to report a fact that [the e]mployer already knew**, *i.e.*, **the amount of [the c]laimant's disability pension**.
>
> The question then is whether [the e]mployer's recoupment of the $1,783.48 it overpaid to [the c]laimant was barred by the application of the equitable principles announced in *Maxim* []. The WCJ applied these principles in ordering [the e]mployer to return $1,783.48 to [the c]laimant. The WCJ construed *Maxim* [] to mean there is a "presumption of prejudice" whenever an employer seeks to recoup an overpayment of offsetable benefits, no matter how implemented. [The e]mployer disagrees with this construction of *Maxim* [] but rejoins that it successfully rebutted any presumption of prejudice.

7

*Wright*, 90 A.3d at 811 (emphasis added; citation omitted).

The *Wright* Court expounded on *Maxim* and *Muir*:

*Maxim* [] was decided on legal grounds, *i.e.*, that the employer had failed to notify the claimant of his duty to report offsetable benefits to the employer. The employer did not issue him a Form LIBC-756, and it did not call or e-mail the claimant to inform him of this duty. The [R]egulation at [Section] 123.501 squarely places the burden on the employer to "notify the employe of the employe's reporting requirements under Section 204" of the Act and to do so by using the prescribed forms. *Maxim* [] went on to explain **that where an employer waits two years to satisfy this notice obligation**, **there will be a presumption that recoupment will cause a hardship**. **This was *obiter dicta* because the case was decided on the employer's failure to inform the claimant of his duty to report offsetable benefits**.

In this appeal, the WCJ, who did not have the benefit of our holding in *Muir*, construed *Maxim* [] to mean that there is always a presumed hardship when an employer undertakes a recoupment. First, *Maxim*[*'s*] [] **conclusion of hardship was based on its particular facts**, *i.e.*, where the recoupment covered a two-year overpayment of disability compensation and reduced the weekly compensation to $0 for six months. In any case, **that conclusion in *Maxim* [] was *obiter dicta*.** Second, *Muir*, advisedly, did not address the equities of recoupment but, rather, **established that the employer must notify the claimant of his reporting requirement by sending him a Form LIBC-756 every six months**. By doing so, *Muir* ensured that it will be a rare case where an employer will need to recoup an overpayment longer in duration than six months. Implicitly, *Muir* **established that a recoupment of an overpayment that occurred over six months or less eliminates the need of the WCJ to inquire into hardship**. This is not to say that a WCJ cannot structure a recoupment in a way that minimizes its impact on the claimant. Such a structuring is consistent with the humanitarian purpose of the Act.

*Wright*, 90 A.3d at 812 (emphasis added; footnote and citation omitted).

8

The *Wright* Court concluded:

> [T]he Board erred in basing its decision on [the e]mployer's failure to send [the c]laimant a Form LIBC-756. **That issue was waived**. The WCJ erred in concluding that an employer must overcome a presumption of prejudice whenever it wishes to recoup an overpayment of offsetable benefits, even one less than six months. [The e]mployer's recoupment of $100[.00] per week from [the c]laimant was permissible and, **to the extent that payment schedule caused a financial hardship in 2005**, **the issue is moot**.[8]

*Id*. at 813 (emphasis added).

In *City of Pittsburgh v. Workers' Compensation Appeal Board (Burke)* (Pa. Cmwlth. No. 362 C.D. 2013, filed July 23, 2014),[9] this Court once again addressed a retrospective offset of WC benefits for pension benefits a claimant received. Therein, the Board agreed with the WCJ that the claimant had waived the issue of whether the employer had to issue the claimant a Form LIBC-756 before taking an offset. Nevertheless, the Board went on to hold that the employer's tender of a Form LIBC-756 was a condition precedent to recoupment of an overpayment of benefits in every case. Because the employer did not satisfy that condition, the Board held that the appropriate course of action was to allow the employer an ongoing offset based on the claimant's receipt of pension benefits *after* the issuance of the Form LIBC-761[10] while disallowing any retrospective credit.

---

[8] The *Wright* Court found the issue of whether the payment schedule caused a financial hardship moot because the claimant waited three years, long after the entire $1,783.48 overpayment had already been recouped, to file his petition to review offset.

[9] Unreported decisions of this Court issued after January 15, 2008, may be cited for their persuasive value but not as binding precedent. *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[10] The employer is required to issue a Form LIBC-761 to notify the claimant that it will be taking an offset.

9

On appeal to this Court, the employer argued that the Board and the WCJ erred in concluding that the employer was not entitled to recoup the overpayment of WC benefits. First, the employer argued that it was not required to issue the claimant a Form LIBC-756 in order to implement a retrospective credit to recover overpaid disability benefits and that, in any case, the claimant waived that issue. Second, the employer asserted that the WCJ erred by holding that the employer's recoupment was presumed to be prejudicial and, thus, not allowed.

After reexamining *Maxim*, *Muir*, and *Wright*, the *Burke* Court concluded that *Wright* was dispositive. Specifically, it determined that the claimant had waived the issue of whether the employer was required to issue the claimant a Form LIBC-756 in order to implement a retrospective credit to recover overpaid disability benefits, there is no presumption that a recoupment is prejudicial, and notwithstanding, the issue of whether the recoupment resulted in any financial hardship or could have been structured differently was moot.[11]

In the instant case, the WCJ found:

> 6. **No evidence established that** [] **Claimant reported and/or didn't report to the insurer on** "**Employees Report of Benefits**," **Form LIBC-756**, that he received amounts for pension benefits in accordance with . . . Section 123.3(a) [of the Board's Regulations] and within 30 days of [] Claimant's receipt of such benefits in accordance with . . . Section 123.3(b) [of the Board's Regulations].
>
> 7. **No evidence established that** after the receipt and/or without a receipt of any notice from [] Claimant, [**Employer**] **issued and/or didn't issue a** . . . **Form LIBC-761**, to [] Claimant about its intended offset for the

---

[11] The *Burke* Court found the hardship issue moot because the claimant filed his review offset petition (petition) in December 2008 and testified in support of his petition in November 2009, two months before the recoupment ended. "In short, by the time [the c]laimant filed his [petition], [the e]mployer had nearly completed the recoupment, and by the time the WCJ issued a decision, the recoupment had been completed for over six months." *Burke*, slip op. at 10.

10

pension payments against the awarded [WC] benefits to [] Claimant at least 20 days before the commencement of the offset in accordance with . . . Section 123.4(a) and . . . 123.4(b) [of the Board's Regulations]. No evidence established that [Employer] issued and/or didn't issue a notice of its intended offset for the pension payments against the awarded [WC] to [] Claimant before the filing date of this petition, specifically on April 10, 2020. The evidence, particularly the averments in the [Modification P]etition, established that [Employer] notified [] Claimant and Claimant's counsel on the filing date of the [Modification P]etition, specifically April 10, 2020, of its requests for a modification of [] Claimant's [WC] benefits from April 10, 2020, for the offset since April 10, 2020, and for the supersedeas from April 10, 2020.

. . . .

10. **No evidence established that** [] **Claimant would experience a hardship** with a monthly pension of $1,977.75 and with or without monthly [WC] benefits as a result of the offset for the net amount of the pension benefits which were received by [] Claimant for the period from August 1, 2019 to February 7, 2021[,] and thereafter.

11. [] **Claimant waived the issue of the LIBC Forms for all purposes and the LIBC Forms weren't an absolute condition precedent to a retroactive offset**. *See*[] [*Wright*].

C.R. at 74-75 (emphasis added; citations omitted).

Based on the above circumstances, and in accordance with the above cited precedents, this Court holds that Claimant waived the issues of whether Employer was required to issue Claimant a Form LIBC-756 in order to implement a retrospective credit to recover overpaid pension benefits, and whether the recoupment resulted in any financial hardship or could have been structured differently. Further, there is no presumption that a recoupment is prejudicial and, notwithstanding, the issue of whether the recoupment resulted in any financial hardship or could have been structured differently is moot because the recoupment

was completed before the WCJ's first decision. Accordingly, the Board did not err by affirming the WCJ's decision.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

Judge Dumas did not participate in the decision in this matter.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Gallese, : 
               Petitioner : 
               : 
         v. : 
               : 
The Pietrini Corporation (Workers' : 
Compensation Appeal Board), :    No. 849 C.D. 2023
              Respondent : 

## O R D E R

AND NOW, this 11th day of October, 2024, the Workers' Compensation Appeal Board's July 6, 2023 order is affirmed.

_____
ANNE E. COVEY, Judge